USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/21/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THE NATIONAL RETIREMENT FUND and :
BOARD OF TRUSTEES OF THE NATIONAL :
RETIREMENT FUND, :
 :
 : 1:19-cv-8018-GHW
                                              Plaintiffs, :
 :
             -against- : MEMORANDUM OPINION
 : AND ORDER
INTERCONTINENTAL HOTELS GROUP :
RESOURCES, LLC :
 :
                                             Defendant. :
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Court Judge:

Plaintiffs the National Retirement Fund (the "NRF" or the "Fund") and its Board of Trustees (the "Trustees") filed this ERISA action to recover withdrawal liability from Defendant InterContinental Hotel Group Resources, LLC ("IHG"). Prior to NRF's filing of this action, IHG initiated arbitration proceedings to dispute the Fund's withdrawal liability assessment. The arbitration is ongoing, concurrent with this action.

NRF alleges that IHG failed to respond to NRF's information requests. NRF allegedly crafted these requests to determine the risk that IHG would be unable to pay its withdrawal liability in accordance with the terms and schedule set forth in the Fund's trust agreement (the "Trust Agreement"). NRF alleges that IHG's failure to respond to its information requests constituted a default under the Trust Agreement. The Trust Agreement provides that a default permits NRF to demand that IHG accelerate payment of the full amount of its withdrawal liability.

Because ERISA mandates that any dispute regarding withdrawal liability be submitted to arbitration in the first instance, the Court cannot rule on the merits of the underlying withdrawal liability dispute at this time. Rather, the Court is limited to assessing whether NRF has plausibly alleged a breach of the Trust Agreement, pending the arbitrator's final decision on the merits. By

plausibly alleging that the Fund's Trust Agreement provided that an employer's failure to respond to an information request constitutes a default and that IHG failed to respond to an information request, NRF has adequately pleaded its acceleration claim. Accordingly, IHG's partial motion to dismiss is DENIED.

## I. BACKGROUND

### A. Facts[1]

The NRF is a trust fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act ("LMRA"). FAC ¶ 7. The NRF sponsors a multiemployer pension fund, the Legacy Plan (the "Plan"), which is governed by ERISA. *Id.* ¶¶ 10, 12. The Trustees administer the NRF, and thus the Plan. *Id.* ¶ 12. Defendant IHG "owns, operates, and/or manages hotels around the world." *Id.* ¶ 17. IHG was obligated, as a contributing employer to the Plan, "to contribute to the NRF on behalf of certain employees of each of the IHG Hotels who participated in [the Plan]." *Id.* ¶ 31.

The NRF is governed by a trust agreement (the "Trust Agreement"). *Id.* ¶ 8. Article VIII, Section 6(2)(f) of the Trust Agreement states that when an employer "fails to provide [the Plan] with its response to [the Plan's] request for information under [29 U.S.C. § 1399(a)] without reasonable explanation," the employer is in default for purposes of 29 U.S.C. § 1399(c)(5)(B). *Id.* ¶ 125. Upon an employer's default "on its withdrawal liability, Article VIII, Section 6(1) of the Trust Agreement empowers the NRF to require immediate payments of all or a portion of that employer's outstanding withdrawal liability." *Id.* ¶ 126. NRF alleges that the Trustees adopted these provisions because it was "the NRF's experience over time that employers who fail to respond to requests from

---

[1] These facts are drawn from Plaintiff's First Amended Complaint ("FAC"), Dkt No. 36, and are accepted as true for the purposes of this motion to dismiss. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

the NRF pursuant to [§ 1399(a)] . . . are substantially more likely not to pay their withdrawal liability." *Id.* ¶ 123. Further, based again on "the NRF's experience[,] . . . the Trustee's believed [these provisions] would help the NRF recover outstanding withdrawal liability from employers." *Id.* ¶ 124. By entering into a series of collective bargaining agreements (the "CBAs"), IHG agreed to be bound by this Trust Agreement. *See* Holiday Inn Historic District – Philadelphia CBA, Ex. 1 to Declaration of Max Garfield ("Garfield Decl."), Dkt No. 54-1, at 14; Crown Plaza Philadelphia Hotel CBA, Ex. 2 to Garfield Decl., Dkt No. 54-2, at 15.

IHG allegedly withdrew from the Plan on February 28, 2013. FAC ¶ 53. After learning of the withdrawal, the NRF issued written requests for information to IHG pursuant to § 1399(a) (the "NRF Requests"). *Id.* ¶ 118. The purpose of the NRF Requests was "to assist the Fund in assessing and collecting withdrawal liability with respect to IHG's complete withdrawal from [the Plan]." *Id.* ¶ 119. IHG failed to respond to the NRF Requests. *Id.* ¶ 121.

On November 24, 2015, "the NRF notified IHG that IHG affected a complete withdrawal from [the Plan] . . . and was liable to the NRF for withdrawal liability." *Id.* ¶ 48. The NRF estimated IHG's total liability to be $8,332,824.00, payable in forty quarterly installment payments of $284.611.01, plus a forty-first and final installment of $178,430.23.[2] *Id.* ¶ 55. On November 28, 2016, IHG filed a demand for arbitration with the American Arbitration Association (the "AAA") challenging NRF's assessment of IHG's withdrawal liability (the "Arbitration"). *Id.* ¶ 59. The Arbitration is ongoing, concurrent with this action. *Id.* ¶ 108.

---

[2] These figures reflected a revised estimate of IHG's withdrawal given NRF's discovery of additional information regarding IHG's withdrawal. *Id.* ¶ 54. NRF's original assessment estimated IHG's liability to be $19,303,143.61, payable in eighty quarterly installment payments of $371,531.49. *Id.* ¶ 48.

### B. Procedural History

NRF filed its case-initiating complaint on August 27, 2019, Dkt No. 1, and filed the FAC on November 1, 2019. Dkt No. 36. The FAC asserts five causes of action against IHG. First, NRF asserts three causes of action alleging IHG's failure to pay installment fees, in violation of ERISA. FAC ¶¶ 130-47. Second, NRF asserts a cause of action alleging IHG's failure to respond to the NRF Requests—resulting in default under the Trust Agreement—and thus seeks accelerated payment of complete withdrawal liability. *Id.* ¶¶ 148-58. Finally, NRF asserts an alternative cause of action for injunctive relief compelling IHG to timely pay all of its withdrawal liability. *Id.* ¶¶ 159-61.

On October 25, 2019, IHG filed a motion to stay the ongoing arbitration. Dkt Nos. 27-30. The Court denied that motion on November 27, 2019. Dkt No. 47. On November 21, 2019, IHG filed its partial motion to dismiss seeking dismissal of NRF's fourth cause of action regarding the NRF Requests. Dkt Nos. 43-45. NRF filed its opposition on December 19, 2019, Dkt Nos. 53-54, and IHG filed its reply on January 3, 2020, Dkt No. 59.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line

4

from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertions devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (brackets omitted) (quoting *Iqbal*, 556 U.S. at 678-79). Thus, a complaint that offers "labels and conclusions" or "naked assertions" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (brackets omitted) (citing *Twombly*, 550 U.S. at 555, 557).

In determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to "facts stated on the face of the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). However, "extrinsic documents may be considered as part of the pleadings if they either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *Id.* (quotation omitted). For a document to be integral to a complaint, "the plaintiff

5

must have (1) 'actual notice' of the extraneous information and (2) 'relied upon the documents in framing the complaint.'" *Id.* (quoting *Chambers*, 282 F.3d at 153) (brackets omitted). While the Court must accept the facts as alleged in the complaint, "when any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." *Rozsa v. May Davis Grp., Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002).

Both parties have submitted declarations in support of their positions with respect to this partial motion to dismiss. IHG submitted a declaration from its counsel, Jacob Oslick, in support of the motion, attaching a letter sent by NRF to IHG. Dkt No. 44. NRF has submitted a declaration from its counsel, Max Garfield, in support of its opposition to the partial motion to dismiss which attaches copies of the CBAs entered into by IHG. Dkt No. 54. The Court will discuss each submission in turn.

The Court cannot consider IHG's letter on a motion to dismiss because it is not "(1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint." *DeLuca*, 695 F. Supp. 2d at 60. The FAC does not attach the letter. While the letter is mentioned in the FAC in passing, *see* FAC ¶ 111, it does not make a "clear, definite, and *substantial* reference" to the letter as required for it to be deemed "incorporated by reference." *DeLuca*, 695 F. Supp. 2d at 60 (emphasis added). And the Court cannot conclude that NRF "relied upon the [letter] in framing the complaint" based on the FAC's scant reference to it. *Id.* Therefore, the Court did not consider the IHG's letter in deciding this motion.

The Court has, however, considered the CBAs NRF submitted. The CBAs are integral to the complaint. NRF had actual notice of the CBAs, as they are discussed extensively in the complaint. Indeed, NRF quotes specific language from the CBAs in the complaint. For example,

6

NRF alleges that "Article 4, Section 1 of the [CBA] between the Historic Hotel and UNITE HERE Local 274, AFL-CIO for the period from June 1, 2008 through May 31, 2014 . . . provides that the 'Employer' is the manager of the Historic Hotel: 'Except as expressly prohibited by this Agreement, the management of the Historic Hotel, the direction of and assignment of work to, the workforce and the right to maintain efficiency and productivity, staff the Historic Hotel and its departments shall be at the Employer's discretion." FAC ¶ 34 (brackets omitted). Moreover, NRF relied upon the CBAs in framing the complaint for the same reason. *Id.* Furthermore, the CBAs are an integral part of the relationship between IHG and NRF, and thus the Trust Agreement. *Id.* The Trust Agreement specifies certain IHG obligations, which are at the heart of NRF's fourth cause of action and the subject of this motion. Therefore, the Court did consider the CBA's in deciding this motion.

## III. DISCUSSION

### A. 29 U.S.C. § 1401(a)

#### 1. Legal Standard

Pursuant to the unambiguous terms of 29 U.S.C. § 1401, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." *See also Trs. of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc.*, No. 03 CIV 4530 (PKC), 2004 WL 67480, at *2 (S.D.N.Y. Jan. 15, 2004) ("Under section 1401(a), a dispute implicating a fund's determination under sections 1381-1399 must be submitted to arbitration."). "This private arbitration procedure—although different from government administrative proceedings—is the administrative remedy that parties are directed to use before turning to judicial forum." *T.I.M.E.-DC, Inc. v. Mgmt. Lab. Welfare & Pension Funds, Of Local 1730 Int'l Longshoremen's Assoc.*, 756 F.2d 939, 945 (2d Cir. 1985).

Employer withdrawal liability is addressed under 29 U.S.C. § 1399.  Section 1399(a) empowers plans to seek information from employers regarding withdrawal liability, stating that "[a]n employer shall, within 30 days after a written request from the plan sponsor, furnish such information as the plan sponsor reasonably determines to be necessary to enable the plan sponsor to comply with the requirements of this part."  *Id.* § 1399(a).  Section 1399(c)(5) addresses employer defaults.  That provision provides:

> (5) [i]n the event of default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made.  For purposes of this section, the term "default" means –
>
> (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and
>
> (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

*Id.* § 1399(c)(5).  Because these withdrawal liability provisions fall squarely within § 1401's arbitration mandate, disputes regarding withdrawal liability generally must be submitted to arbitration.  *See Steve Petix Clothier, Inc.*, 2004 WL 67480, at *5 ("[Defendant's] ultimate withdrawal liability should be evaluated by an arbitrator, as Congress intended when it drafted section 1401(a)(1)."); *Nat'l Pension Plan of Unite Here Works Pension Fund v. Westchester Lace & Textiles, Inc.*, No. 05 Civ. 6138 (RPP), 2006 WL 2051107, at *10 (S.D.N.Y. July 21, 2006) (refusing to determine the reasonableness of a Fund's § 1399(c)(5)(B) default provision because "ERISA provides that disputes over withdrawal liability be resolved through arbitration").[3]

---

[3] *See also GCIU-Emp'r Retirement Fund v. Vanard Lithographers, Inc.*, CV 12-5169 PSG (JEM), 2013 WL 12080961, at *3 (C.D. Cal. June 7, 2013) (holding that disputes regarding a Fund's determination of employer default based on a substantial likelihood that it would be unable to pay its withdrawal liability "must be submitted to arbitration").

A narrow exception to § 1401's strictly-construed arbitration mandate exists where "the dispute is not solely over factual issues, but instead involves a constitutional question or, in some cases, a matter of statutory interpretation." *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 6 (E.D.N.Y. 2001) (citing *T.I.M.E.-DC, Inc.*, 756 F.2d at 945). Hence, "where the parties' disagreement is a factual dispute related to imposition of withdrawal liability, that dispute must be arbitrated." *Id.* And importantly, where the statute at issue "requiring interpretation is one of the statutes subject to the arbitration requirement of § 1401, i.e. 29 U.S.C. §§ 1381-99, that interpretation should be submitted to an arbitrator." *Id.* at 7 (citing *ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 886 (2d Cir. 1988); *see also Levy Bros. Frocks, Inc*, 846 F.2d at 886 ("[T]he issues of statutory interpretation raised by the Corporation largely involve interpretations under sections 1381 through 1399, interpretations which we believe Congress envisioned would be made by the arbitrator in the first instance."). Thus, the vast majority of disputes regarding withdrawal liability should be decided by an arbitrator in the first instance.

### 2. Application

The Court is not permitted to determine the merits of the underlying disputes regarding employer withdrawal liability prior to adjudication by an arbitrator. IHG seeks dismissal of NRF's acceleration claim because it argues that "the purported default provision violates ERISA." Def. Mem. at 5 (capitalization altered and quotations omitted). Specifically, IHG asserts that NRF's rule that "a failure to respond to an information request [pursuant to § 1399(a)] simply does not comply with ERISA and its regulations" because such a failure does not "indicate 'a substantial likelihood that an employer will be unable to pay its withdrawal liability.'" *Id.* at 7-8 (citing 29 U.S.C. § 1399(c)(5)(B)). Thus, IHG seeks dismissal of NRF's acceleration claim because the Fund's "rule is

9

far beyond and contrary to its statutory authority under ERISA and thus, by definition, also unreasonable." *Id.* at 9.

Because this is a "dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under section[] . . . 1399," it "shall be resolved through arbitration" and not by the Court in the first instance. 29 U.S.C. § 1401(a). IHG asks the Court to interpret § 1399(c)(5)(B) and find that NRF's insecurity "default provision violates ERISA." Def. Mem. at 5 (quotations omitted and capitalization altered). The Court may not—and will not—ignore § 1401's mandate that disputes involving § 1399(c)(5)(B) determinations be resolved by an arbitrator in the first instance. IHG's statutory interpretation request does not fall within the narrow, rare exception to § 1401. This case does not involve a constitutional question. And while this case does require statutory interpretation, "the statute requiring interpretation"—§ 1399(c)(5)B)— "is one of the statutes subject to the arbitration requirement of § 1401, i.e. 29 U.S.C. §§ 1381-99," and thus "should be submitted to an arbitrator." *Rao*, 149 F. Supp 2d at 7 (citing *Levy Bros. Frocks, Inc.*, 846 F.2d at 886).

Courts have rejected attempts by parties to "seek a determination from [the] Court that [a fund manager's] determination to require immediate payments pursuant to [§ 1399(c)(5)] was unreasonable" because "ERISA provides that disputes over withdrawal liability be resolved through arbitration." *Westchester Lace & Textiles, Inc.*, 2006 WL 2051107, at *10; *see also Cent. Sts. Se. & Sw. Areas Pension Fund v. O'Neil Bros. Transfer & Storage Co.*, 620 F.3d 766, 771-72 (7th Cir. 2010) (recognizing the requirement that disputes concerning withdrawal liability "shall be resolved through arbitration" and noting that "the propriety of the plan's default determination is beyond the scope of [the court's] review" without first being arbitrated); *Vanard Lithographers, Inc.*, 2013 WL 12080961, at *3 ("Here, Defendant disputes Plaintiffs' determination that it was in default—i.e., its determination

that there was a substantial likelihood that it would be unable to pay its withdrawal liability . . . . However, the question of whether Plaintiffs correctly determined that Defendant was in default must be submitted to arbitration."). Accordingly, the Court will not address any arguments regarding the propriety of NRF's Trust Agreement's default provision.

### B. Acceleration Claim

The parties do not dispute that, if there is a valid default under § 1399(c)(5)(B), NRF can require IHG to pay its full withdrawal liability on an interim basis during the pendency of arbitration.[4] Thus, the Court is limited to determining whether—assuming the Trust Agreement's insecurity default provision is valid under ERISA, a question that must be determined by the arbitrator in the first instance—NRF has plausibly alleged a default within the meaning of the Trust Agreement.[5]  *See Scara-Mix*, 2017 WL 9485710, at \*17 ("Thus, the only remaining question at this stage of the proceedings is whether there is a basis in the record to find the occurrence of an event as set forth in [the relevant trust agreement] which could serve as the necessary predicate for

---

[4] In *Gesualdi v. Scara-Mix, Inc.*, the parties disputed whether the plaintiff could compel the defendant to pay its full withdrawal liability pending arbitration adjudication based on a § 1399(c)(5)(B) default. CV 14-765 (JS) (AKT), 2017 WL 9485710, at \*12 (E.D.N.Y. Feb. 7, 2017), *report and recommendation adopted*, 14-CV-0765(JS)(AKT), 2017 WL 945090 (E.D.N.Y. Mar. 10, 2017). The *Scara-Mix* court comprehensively analyzed the statutory and regulatory framework regarding withdrawal liability and—based on Congressional and regulatory intent—determined that "a plan may find an employer in default pursuant to 29 U.S.C. § 1399(c)(5)(B) and applicable plan rules and thereby accelerate payment of the full withdrawal liability balance, notwithstanding the pendency of an arbitration." *Id.* at \*15. Here, because the parties do not dispute that IHG can be compelled to pay its full withdrawal liability if a default has occurred, the Court does not examine that issue.

[5] To assert a claim for interim withdrawal liability payments—that is, to allege that an employer partially or fully withdrew from the plan—plaintiffs must comply with the statutory procedural requirements of § 1399(b)(1). Those requirements are that "[t]he plan sponsor must: (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule." *Bowers of NYSA–ILA Pension Trust Fund v. Transportes Navieros Ecuadorianos (Transvare)*, 719 F. Supp. 166, 172 (S.D.N.Y. 1989) (citing 29 U.S.C. §§ 1382, 1399(b)(1)). But because this case concerns accelerated withdrawal liability payment pursuant to a § 1399(c)(5) default, the procedural requirements of § 1399(b)(1) do not apply. *See Div. 1181 Amalgamated Transit Union–New York Emps. Pension Fund & Its Tr. v. D&A Bus Co., Inc.*, 270 F. Supp. 3d 593, 609 (E.D.N.Y. 2017) ("*In addition* to satisfying the elements for the award of interim withdrawal liability payments [pursuant to § 1399(b)], Plaintiff has *also* pleaded facts illustrating that it is entitled to an accelerated payment of the entire withdrawal liability amount, pursuant to 29 U.S.C. § 1399(c)(5)(A).") (emphasis added); *see also id.* at 610 (holding that "in accordance with ERISA, Plaintiff is entitled to an immediate payment of the entire unpaid amount of withdrawal liability due and owing" when it pleads that the defendant employer defaulted pursuant to § 1399(c)(5)(A)).

imposition of a default and concomitant demand for acceleration pursuant to 29 U.S.C. § 1399(c)(5)(B)."); *id.* at *19 ("Therefore, notwithstanding the ultimate reasonableness of this determination in light of the underlying facts—a decision that must be resolved by the arbitrator—Defendant is obligated, at this juncture, based upon Plaintiff's demand, to remit the entire withdrawal liability balance pending the arbitrator's final determination on the merits.").

### 1. Legal Standard

Under ERISA's "pay now, dispute later" rule, an employer must make immediate payment upon a Fund's demand, regardless of whether it disputes the propriety of the payment. *See Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 197 (1997) ("Even if the employer challenges the trustee's withdrawal liability determination, however, it still must pay according to the trustee's schedule in the interim under the statute's 'pay now, dispute later' collection procedure."). As explained above, under ERISA, "[i]n the event of default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). "Default" is defined as:

> (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and
>
> (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

*Id.*

At issue in this case is Subsection (B), otherwise known as an "insecurity default." When a fund adopts a rule identifying an event as an insecurity default—i.e. an event that it determines indicates a substantial likelihood that the employer will be unable to pay its withdrawal liability—the fund is entitled to an immediate payment of the outstanding amount of the assessed liability should

12

the event occur. *See id.* § 1399(c)(5); *Retirement Fund of Fur Mfg. Indus. v. Robert Goldberg Furs, Inc.*, 754 F. Supp. 356, 357 (S.D.N.Y. 1991) (stating that a § 1399(c)(5)(B) default entitles the fund to immediate payment of assessed withdrawal liability).[6]

The PBGC offers a list of events that constitute a substantial likelihood of an inability to pay. The events listed include when an employer "declares bankruptcy, makes an assignment for the benefit of creditors, or begins liquidating all of its assets." 49 Fed. Reg. 22642, at 22644. The PBGC guidance is clear that these events are examples of possible insecurity default events and that, therefore, the list is not meant to be exhaustive. *Id.*

Because courts may not determine in the first instance whether the Trust Agreement is consistent with ERISA, the withdrawal liability inquiry at the motion to dismiss stage is narrow. To survive a motion to dismiss, the Fund must plausibly allege that it adopted rules setting forth events indicating a substantial likelihood that the employer will be unable to pay its withdrawal liability and that, based on the occurrence of one or more such events, a default occurred. *Cf. Scara-Mix, Inc.*, 2017 WL 9485710, at *18 (explaining the requirements for accelerating payment under § 1399(c)(5)(B) at the summary judgment stage).

### 2. Application

Assuming the Trust Agreement in valid under § 1399(c)(5)(B), NRF sufficiently pleads its acceleration claim. NRF alleges that the Trust Agreement contains a provision establishing default in the event an employer fails to respond to a § 1399(a) request without reasonable explanation. FAC ¶ 125. Upon such a default, the Trust Agreement empowers "NRF to require immediate payment of all or a portion of that employer's outstanding withdrawal liability." *Id.* ¶ 126. The

---

[6] The Pension Benefit Guaranty Corporation ("PBGC")—the agency charged with the administration of ERISA's withdrawal liability provisions—"believes it is important for the protection of plans that they be able to exercise this [§ 1399(c)(5)(B) acceleration] power at any time, even during plan review or arbitration." 49 Fed. Reg. 22642, at 22644 (May 31, 1984).

trustees adopted these provisions of the Trust Agreement because in their "experience over time . . . employers who fail to respond to requests from the NRF pursuant to . . . § 1399(a), are substantially more likely not to pay their withdrawal liability," *id.* ¶ 123, and that such a default mechanism "would help the NRF recover outstanding withdrawal liability from employers." *Id.* ¶ 124. NRF further alleges that "IHG never responded to the NRF requests," *id.* ¶ 121, constituting a default under the Trust Agreement and entitling NRF to "accelerate and demand full and immediate payment of the total amount of withdrawal liability owed."[7] *Id.* ¶ 154. Because NRF alleges that it adopted its information request default rule based on the substantial likelihood that employers who fail to respond to such requests will not pay their withdrawal liability and that IHG defaulted by failing to respond, NRF's FAC "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted).

IHG's arguments to the contrary are unpersuasive. IHG first argues that NRF's information request default provision violates ERISA because "[t]he same statutory section that permits information requests also, separately, defines a 'default.'" Def. Mem. at 6 (emphasis omitted). Even if the Court could engage in statutory interpretation prior to arbitration adjudication—which, as explained above, it cannot—IHG's argument fails to recognize the flexibility Section 1399(c)(5)(B) confers upon funds to draft insecurity default provisions. Indeed, other than an employer's failure to make withdrawal liability payments, ERISA broadly permits funds to recognize "*any* other event" as an insecurity default event if it indicates a substantial likelihood of an employer's inability to pay its withdrawal liability. § 1399(c)(5)(B) (emphasis added). And the PBGC's guidance here merely offers a non-exhaustive list of examples of what may constitute an insecurity default. *See* 49 Fed.

---

[7] The Court notes that IHG agreed to be bound to the Trust Agreement—and thus to this insecurity default provision—by entering into the CBAs. *See* Holiday Inn Historic District – Philadelphia CBA at 14; Crown Plaza Philadelphia Hotel CBA at 15.

14

Reg. 22642, at 22644.  Section 1399(c)(5)(B)'s sweepingly broad language, coupled with the PBCG's non-exhaustive examples of insecurity defaults, therefore does not preclude a fund from recognizing default based on the failure to respond to an information request, notwithstanding the fact that information requests are addressed under Section. 1399(a).

IHG next argues that, under § 1399(a), a "plan sponsor may only seek information that it 'reasonably determines to be necessary to enable the plan sponsor to comply with requirements of this part.'"  Def. Mem. at 9 (citing § 1399(a)).  IHG thus asserts that NRF fails to allege facts supporting the conclusion that the information requested was reasonably determined as necessary under § 1399(a).[8]  *Id.* at 9-10.  However, NRF sent the information requests, pursuant to § 1399(a), after it had learned of IHG's complete withdrawal from the Plan.  FAC ¶ 118.  NRF alleges that the purpose of the requests was "to assist the Fund in assessing and collecting withdrawal liability with respect to IHG's complete withdrawal from [the Plan]."  *Id.* ¶ 119; *cf. Canario v. Lidelco, Inc.*, 782 F. Supp. 749, 751 (E.D.N.Y. 1992) (showing that a § 1399(a) information request could be used to gather "certain information to be used in calculating [a defendant's] liability").  Again, at this stage, the Court cannot determine whether the Trust Agreement is consistent with ERISA because that is a question that must be answered by the arbitrator in the first instance.  Rather, the Court's inquiry on this motion to dismiss is whether—assuming the Trust Agreement is valid—NRF has plausibly

---

[8] The parties agree that, prior to arbitration adjudication, courts are empowered to decide whether an information request is necessary and, if so, order production of the documents.  *See* Def. Mem. at 6; Pl. Mem. at 16.  ERISA provides that "[a] plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan . . . may bring an action for appropriate legal or equitable relief, or both."  29 U.S.C. § 1451(a)(1).  While reading this provision to permit judicial intervention prior to arbitration may conflict with § 1401's arbitration mandate because, as discussed above, disputes arising under § 1399 are subject to arbitration, courts have compelled production of information in response to a § 1399(a) request.  *See Deianni v. New Media Printing*, No. CV 11-5267 (DRH) (ARL), 2012 WL 3842596, at *8 (E.D.N.Y. Aug. 17, 2012) (holding that a defendant failed to produce properly requested information and directing it to furnish the information to the plaintiff), *report and recommendation adopted*, No. 11 CV 5267 (DRH) (ARL), 2012 WL 3839618 (E.D.N.Y. Sept. 5, 2012); *D&A Bus Co., Inc.*, 270 F. Supp 3d at 617 (same).  Thus, the Court may decide whether NRF has adequately pleaded facts to support its allegation that it reasonably determined the § 1399(a) requests were necessary to determine IHG's withdrawal liability.

alleged a breach of that agreement. Drawing all reasonable inferences in NRF's favor, the Court finds that NRF reasonably determined the § 1399(a) requests were necessary to determine IHG's withdrawal liability.

IHG further argues that NRF fails to plead any facts supporting its allegation that, in the Trustee's experience, failure to respond to information creates a substantial likelihood that an employer will be unable to pay its withdrawal liability. Def. Mem. at 10-11. Specifically, IHG argues that "in its experience" is a conclusory allegation, and thus does not state a plausible claim. *Id.* at 11. In other words, IHG seeks dismissal of the acceleration claim because NRF did not detail the Trustees' prior experiences with employers which led them to craft the Trust Agreement as they did. But "the pleading standard Rule 8 announces does not require detailed factual allegations," which is exactly what IHG demands here. *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted). To require NRF to allege its Trustee's experiences in detail would call for "a heightened pleading requirement,' requiring the pleading of 'specific facts' beyond those necessary to state [a] claim and the grounds showing entitlement to relief." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). By alleging that its Trustees tailored the Trust Agreement to reflect their experience that an employer's failure to respond to a § 1399(a) information request made it substantially more likely that the employer would not pay its withdrawal liability, NRF states an acceleration claim that is plausible on its face.

Finally, IHG argues that "the parties' arbitration moots [the acceleration claim]" because IHG produced NRF's information request documents during discovery in the ongoing arbitration. Def. Mem. at 12-13. This argument is unpersuasive because IHG's arbitration discovery production does not warrant the dismissal of NRF's acceleration claim. Notwithstanding IHG's subsequent production of the requested information, NRF has plausibly alleged that IHG defaulted by failing to

16

respond to NRF's information requests. This default entitles NRF to "require immediate payment of the outstanding amount of [IHG's] withdrawal liability." 29 U.S.C. § 1399(c)(5)(B). IHG's production of the information requested by NRF—approximately four years later—does not cure its default and therefore cannot serve as a basis for dismissal of NRF's acceleration claim.

## IV. CONCLUSION

For the foregoing reasons, IHG's partial motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion pending at Dkt No. 43.

SO ORDERED.

Dated: April 20, 2020

GREGORY H. WOODS
United States District Judge